**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | : | No. 19-cr-292 (JDB) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| LARRY KEY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Sentencing Memorandum as to the defendant Larry Key (the "defendant").

**FACTUAL AND PROCEDURAL BACKGROUND**

As this Court knows, four defendants pled guilty in conjunction with one another: Darren Piles, Reginald Sutton, Warren Boyd, and Elgin Hoggard. Piles, Sutton, and Boyd pled guilty to a single count of Conspiracy to Distribute and Possess with Intent to Distribute a Detectable Amount of Cocaine Base ("crack cocaine"), pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), & 846. *See* ECF No. 117 (Piles' plea agreement); ECF No. 127 (Boyd's plea agreement); and ECF No. 113 (Sutton's plea agreement). Hoggard entered a guilty plea to one count of Possession of Crack Cocaine, in violation of 21 U.S.C. § 844(a). ECF No. 180 (Hoggard's plea agreement). As part of those plea agreements, the defendants collectively accepted their role in a conspiracy to distribute crack cocaine.

The defendant, along with Lemar Kinnard and Stephon Davis, represent the next tier of defendants in this conspiracy. Initially, the defendant was indicted on a single count of Conspiracy

to Distribute and Possess with Intent to Distribute 280 Grams or More of Crack Cocaine (carrying with it a ten-year mandatory minimum term of incarceration). ECF No. 1 (19-cr-292-JDB). In addition, the defendant was indicted with four additional counts of Distribution of a Controlled Substance, to wit: heroin (twice) and fentanyl (twice) based on controlled purchases that occurred in August and September of 2018. *See* ECF No. 1 (19-cr-291-JDB).

On July 22, 2020, in case 19-cr-292-JDB, the defendant pled guilty to a superseding information (ECF No. 186) to three felony counts: one count of Conspiracy to Distribute and Possess with Intent to Distribute 28 Grams or More of Crack Cocaine (thereby reducing the mandatory minimum term to five years' imprisonment) as well as two additional counts of Distribution of Heroin and Fentanyl, based on the purchases indicted in 19-cr-291-JDB. *See* ECF No. 188 (Plea Agreement) and ECF No. 189 (Proffer).

As part of the plea agreement, the defendant accepted his larger role in the conspiracy, to include the following facts as documented in the proffer:

In July of 2018, the Federal Bureau of Investigation ("FBI") and the Metropolitan Police Department ("MPD") began investigating an individual named Larry Key for possible narcotics trafficking activity. Law enforcement also identified Key's supplier—specifically for cocaine base or crack cocaine—as Stephon Davis. The FBI used various means of surveillance to gather evidence, including the use of a confidential informant, several controlled purchases, and the use of a Title III wiretap, intercepting hundreds of calls from Key and Davis related to the distribution of crack cocaine.

With respect to the defendant, in the late summer of 2018, the defendant—on four separate occasions—sold narcotics to a confidential informant. Specifically, on August 6, 2018, the

defendant exchanged 5 grams of heroin for $400 in U.S. currency. On August 20, 2018, the defendant exchanged 5 grams of heroin for $400. On September 4, 2018, the defendant exchanged 10 grams of fentanyl for $800 (the confidential informant sought to purchase heroin; however, the drugs provided by the defendant were instead the synthetic opioid: fentanyl). And on September 20, 2018, the defendant exchanged 8 grams of heroin for $640. These controlled purchases all occurred before the defendant became involved in this conspiracy.

With respect to the defendant's role in this conspiracy, the defendant engaged in several additional controlled narcotics sales to an undercover confidential informant. Specifically, on March 14, 2019, the defendant exchanged one ounce of crack cocaine for $1,400. On June 4, 2019, the defendant exchanged one ounce of crack cocaine for $1,300.

All six of the abovementioned controlled purchases were audio or video recorded. Moreover, the informant was searched before and after each purchase to ensure the integrity of the operation.

In addition to the controlled purchases, the defendant also frequently communicated with his crack cocaine supplier, Stephon Davis. During the wiretap interceptions, there were 94 pertinent narcotics-related calls between the defendant and Davis, and law enforcement observed the two meet on at least 35 occasions in order to exchange narcotics for the defendant to resupply. The defendant acknowledges that during these meetings, he purchased at least 280 grams of cocaine base to redistribute. For example, on November 26, 2018, the defendant called Davis and said, "Tell me something I want to hear, tell me something I want to hear." Davis asked if the defendant was ready, and the defendant replied, "Yeah what's the ticket?" Davis replied, "Five-five. We was at the extra hundred plus the 450." The defendant responded, "Oh yeah I thought it

was less than that." Davis replied, "Come on baby stay on point with me, I'm gonna stay on point with you." Davis told the defendant, "Come to me." This conversation signified the distribution of a half-ounce of crack cocaine in exchange for $550, consistent with the redistribution of narcotics to others.

On February 22, 2019, the defendant spoke to Davis and told him "You know what I'm trying to do, go as far as I can go slim. I got you on that." After some additional conversation, Davis told the defendant to "come outside in three minutes. Come outside and bring your calculator." Within minutes, the defendant arrived. The defendant told another person that he was "getting ready to put something together now," a reference to obtaining redistribution levels of narcotics.

On May 28, 2019, the defendant spoke to Davis and said that he was trying "to do something different . . . like 2 and 1 . . . A big 2." Davis responded that he could come to see him. The defendant was telling Davis that he had $2,000 to spend on crack cocaine, a quantity of cocaine easily over 30 grams.

On August 4, 2019, the defendant spoke to Davis, and told Davis "I need to see you . . . I'm trying to step my game up. That's what I'm trying to do", indicative of the defendant's desire to engage in larger purchases of narcotics.

Overall, through interceptions, surveillance, and controlled purchases, the defendant worked directly below Davis to resupply crack cocaine to other customers.

As the Court can discern, the proffer delineates the defendant's role as that of a larger trafficker than Piles, Sutton, Boyd, and Hoggard listed above. Rather, the defendant's role is more on par with Kinnard. And while the defendant very clearly accepted fulsome responsibility for his

4

offenses, it is worth noting that although the defendant's guidelines exposure remains the same, he obtained a real benefit with respect to his possible mandatory minimum incarceration.

## DEFENDANT'S HISTORY AND CHARACTERISTICS

The defendant's criminal history is outlined in the final presentence investigation report ("PSR"). *See* ECF No. 215, at 12-18. The defendant's convictions are fairly old, but nevertheless alarming. In 1985, when the defendant was approximately 22 years old, he was convicted of Possession of PCP. *Id.* at 12. The following year, he was convicted of Assault with Intent to Kill While Armed; Armed Robbery; and Carrying a Pistol Without a License. *Id.* at 13. Finally, three years later, after his release from custody, he picked up another firearms charge. *Id.* at 14. Since then, the defendant has been free of any additional convictions.

On that same token, however, he has not been free of arrests. From 1985 to 1996, he obtained additional narcotics and firearms charges, including a 1996 stet-eligible set of charges related to possession handguns during crimes of violence, a concerning escalation given his prior conduct. *Id.* at 16. The defendant would have been free of additional criminal history, but for his 2018 arrest for simple assault, which was dismissed for want of prosecution. *Id.* at 17. The conduct described in the *Gerstein* affidavit, however, continues to raise meaningful concerns about the defendant's penchant for violence and his ability to control himself. *Id.*

In terms of his characteristics, the defendant does have some positive aspects of his life. For example, he has a good relationship with his family, *id.* at 18; does not have a known history of mental health problems, *id.* at 22; and seems amenable to treatment given his prior substance abuse, *id.*

The defendant also has an extensive medical history. Specifically, the defendant had

previously been shot. ECF No. 215, at 21. Additionally, he has a litany of medical ailments, including serious disabling diseases that will likely affect his long-term health. *See id.* at 21. On one hand, this is helpful information and helps to show that the defendant perhaps represent less of a danger given his ongoing health issues and his necessary long-term care. On the other hand, however, none of his ailments stopped him from narcotics trafficking. In fact, the government is aware that one of the defendant's friends passed away during the time frame of the defendant's offenses as a result of a fentanyl overdose. That this event alone did not provide pause as to the defendant's *mens rea* in this enterprise should greatly concern this Court.

## SENTENCING FACTORS

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary to comply with the purposes of the statute which include the need for the sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training. In addition, the statute requires the court to consider a number of factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

# ARGUMENT

*Guidelines*

The government concurs with probation's guidelines analysis. As noted by probation, the defendant has a base offense level of 30, given the quantity of the drugs and weights involved. ECF No. 215, at 11. As the defendant meets the criteria under the safety-valve, he receives a two-point reduction. *Id.* at 12. With acceptance of responsibility, which the government credits, the total adjusted offense level is 25. *Id.* With a criminal history category of I, this translates to an applicable guidelines range of 57 months to 71 months. *Id.* at 24. Because the defendant met the criteria pursuant to 18 U.S.C. § 3553(f)(1)-(5), the Court shall impose a sentence without regard for the five-year mandatory minimum (60 months). *Id.*

Based on the defendant's history and characteristics, and the relevant §3553 factors, the government hereby requests that the Court impose a sentence of 64 months' imprisonment, followed by five years of supervised release.

*The Seriousness of the Offense*

First, the offense is serious. Distributing various amounts of narcotics, including fentanyl, to an undercover officer, along with a months-long conspiracy to distribute crack cocaine is unquestionably a dangerous endeavor. Unlike Piles, Boyd, or Sutton, all of who distributed street-level narcotics, this defendant acted as a larger siphon for such trafficking in concert with Kinnard and Davis. Regardless, the act of drug dealing is not merely a victimless crime. It affects thousands of Americans who overdose. It affects the many families who deal with addiction and substance abuse, and the massive collateral effects that come from such abuse. It also creates a perverse black market riddled with bad product and violence. That the defendant did those over the course of a

year only serves to enhance the danger he represents and the punishment he should face.

*The Defendant's History and Characteristics*

Second, the defendant's criminal history is fairly old, but nevertheless concerning. Without belaboring his history as discussed above, the defendant, at least to the government, presents himself as an older man with little fortune in life, and a person who sells to stay afloat. But his conduct is not simply a happenstance mistake or a mild lapse in judgment, but rather a concerted effort to traffic a variety of drugs worth thousands of dollars in weight, over the course of a year plus. To suggest that this is simply a blip on the defendant's radar would be incorrect. Rather, the defendant is a drug dealer, and his older age and/or physical infirmities have not acted as a meaningful barrier to committing crimes.

The government appreciates the defendant's advocacy on this very issue. According to the defendant, his own health issues, coupled with the pandemic, suggest that anytime the defendant spends in prison "will be necessarily be more severe than it ordinarily would" and that the defendant would be in an "oppressive" setting. Def's Sent. Mem. at 5. But this factor alone is not dispositive. If taken to its logical extreme, such a position would excuse any penal punishment on the basis of medical issues. And while the defendant may be eligible for compassionate release at a later time, taking into account that the U.S. Bureau of Prisons is capable of determining the best place for confinement, we do not believe a sentence of home confinement is appropriate at this juncture. *See id.* at 3 (citing terminal illness and organ disease as possible grounds for a reduction in punishment).

*Respect for the Law, Protection of the Public, and Deterrence*

Third, the government's recommended sentence promotes respect for the law and acts as a

deterrence for future crimes, two factors of which this Court is required to consider as part of its sentence in this case. Not only does this sentence appropriately and specifically deter the defendant from such future conduct, but importantly serves as a reminder to the community-at-large that such offenses shall not be tolerated. This deterrence effect is a meaningful aspect to what Congress intended. The defendant in this case, with a spotty, dangerous, but old criminal history, engaged in a lengthy trafficking scheme involving first heroin and fentanyl, and then crack cocaine. He worked with a younger trafficker (Davis), and helped peddle drugs to other street-level dealers. Based on these circumstances alone, the government is hard pressed to request the low-end of the applicable sentencing guidelines range.

With that in mind, the defendant also accepted responsibility fulsomely, and did so in conjunction with safety-valve application. Given that his criminal history is indeed older, and there are clearly medical and substance abuse reasons to help explain the defendant's lot in life, it is equally as compelling as to why a high-end sentence is unwarranted too. Thus, the government requests a sentence in the mid-range of the applicable guidelines. *But see* ECF No. 216, at 3 (where probation recommended a sentence at the low-end, but acknowledged that an upward variance may be warranted due to his continued involvement in narcotics trafficking and his uncounted criminal history). This recommendation is consistent with principles of justice, and follows the legal contours set forth by Congress and the Sentencing Commission.

## CONCLUSION

Based on the abovementioned factors, the government respectfully requests that the Court impose the following sentence:

1)  64 months' imprisonment; 5 years of supervised release;

2)  Recommend that the defendant undergo substance abuse testing and treatment, and follow

any recommendations;

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
New York Bar No. 4444188

By:  _____/s/_____
GREGORY P. ROSEN
VA Bar No. 82584
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
(202) 252.6932
Gregory.Rosen@usdoj.gov